IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Anthony Clark Odom, | ) | C/A No. 5:15-03249-MBS-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Jerry B. Adger, Director of South Carolina | ) | |
| Department of Probation, Parole, and Pardon | ) | |
| Services, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Anthony Clark Odom ("Petitioner") is currently on probation for a 2011 conviction, and he filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 22, 23. On January 22, 2016, Brian D. McDaniel, Esq., filed a Response in Opposition to Respondent's Motion for Summary Judgment on Petitioner's behalf. ECF No. 29. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 23, **be granted**.

I.      Background

Petitioner is currently on probation and in the custody of the South Carolina Department of Probation, Parole, and Pardon Services. ECF No. 1 at 1.  This habeas matter concerns criminal charges associated with Petitioner's participation in internet chat rooms where Petitioner solicited individuals he thought to be minors. In reality, the minors were actually law enforcement officers posing as minors. Petitioner participated in communications occurring from

March 12, 2006, through May 4, 2006. On June 22, 2006, Petitioner was indicted at the April term of the Spartanburg County Grand Jury for one count of criminal solicitation of a minor as a result of internet communications between Petitioner and a law enforcement officer. ECF No. 22-1 at 7. Prior to Petitioner's Spartanburg trial, Petitioner was granted a motion to suppress evidence, and the State appealed. *Id.* On appeal, the South Carolina Supreme Court reversed the suppression order, and the case proceeded to trial. *Id.* Upon remand from the Supreme Court, the Spartanburg trial resumed in February of 2010, and ended a mistrial due to a deadlocked jury. *Id.* at 8. A week before the Spartanburg trial, the State advised Petitioner that "charges [for chatroom communications occurring May 4, 2006, through May 6, 2006, with a law enforcement officer for the Westminster Police Department of Oconee County] would be submitted to the Oconee County Grand Jury for True Bill as a separate case." ECF No. 22-3 at 3.

After the Spartanburg trial, Petitioner was indicted for two counts of criminal solicitation of a minor in Oconee County. (2010-GS-37-363A; 2010-GS-37-364A). ECF No. 22-1 at 15-18. Attorney James B. Huff represented Petitioner before Judge Macaulay on June 1, 2011. ECF No. 22-4 at 34. Ultimately, Judge Macaulay recused himself from the action. *Id.* at 131-33. Thereafter, on November 1, 2011, the case was brought before Judge R. Lawton McIntosh in Anderson, South Carolina. *Id.* at 134. Attorney Huff represented Petitioner and Assistant Attorney Generals Megan Wines and Jason Anders represented the State. *Id.* After the trial, the jury found Petitioner guilty on one count of criminal solicitation with a minor. ECF No. 22-9 at 9. Judge McIntosh sentenced Petitioner to seven-years' imprisonment suspended upon five-years' probation. *Id.* at 11. Additionally, Judge McIntosh instructed Petitioner to register as a sex offender. ECF No. 22-1 at 4. Judge McIntosh denied Petitioner's Motion for a new trial. *Id.* at 5; ECF No. 22-2 at 192-98.

Attorney Brian McDaniel represented Petitioner on appeal and briefed the following issues:

I.  Was it unconstitutional, and not subject to harmless error, for the trial court to (A) take conclusive judicial notice of an element of the crime charged, and (B) instruct the jury, during jury deliberations, to disregard evidence on the element of "Official Capacity"?
    a.  The trial court's unconstitutional taking of conclusive judicial notice of a crime element, and the application of harmless error.
    b.  Trial court instructions to the jury after the jury had begun deliberations, to disregard legal evidence, thereby interfering with the jury's fact finding role on the element of "Official Capacity," and the application of harmless and cumulative error.
II.  Did the trial court err in failing to dismiss the indictment due to vindictive prosecution?
III.  Did the trial court err in failing to dismiss the charges due to S.C. Code § 16-15-342 being unconstitutional under the equal protection clauses of the South Carolina and United States Constitutions?
IV.  Does S.C. Code § 16-15-342, as interpreted at trial and as being enforced, violate the free speech clauses of the South Carolina and United States Constitutions?
    a.  Is this protected speech and how to construe S.C. Code § 16-15-342 and S.C. Code § 16-15-375(5) together and application of the "Chilled Speech Doctrine."
    b.  Does conducting sting operations in adult rooms with no emphasis on minor children violate the "Chilled Speech Doctrine"?

ECF No. 22-10 at 8. Assistant Attorney General William M. Blitch filed a Response Brief on behalf of the State. ECF No. 22-11. On April 22, 2015, the South Carolina Supreme Court affirmed Petitioner's criminal solicitation of a minor conviction. ECF No. 22-12. After the court denied Petitioner's Petition for Rehearing, ECF Nos. 22-13, 22-14, the Supreme Court issued a Remittitur on June 5, 2015, ECF No. 22-15. Petitioner did not file an application for Post-Conviction Relief. This federal habeas Petition followed and was filed on August 14, 2015. ECF No. 1.

II.  Discussion

A.  Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

> GROUND ONE: The trial court's taking of conclusive judicial notice of an element of a crime was in violation of the United States Fifth, Sixth, and Fourteenth Amendments as well as established Federal law under United States Supreme Court Decisions.
> Supporting Facts: Petitioner attaches nine pages of "Factual and Legal Basis" supporting Ground One. ECF No. 1 at 6-14.
>
> GROUND TWO: In the trial court instructing the jury, after deliberations had begun, to disregard legal evidence, it thereby interfered with the jury's fact-finding role on the crime of "Official Capacity" in violation of the United States Constitution Fifth, Sixth, and Fourteenth Amendments as well as established Federal law under United States Supreme Court Decisions.
> Supporting Facts: Petitioner attaches 15 pages of "Factual and Legal Basis" supporting Ground Two. *Id.* at 14-30.
>
> GROUND THREE: In the trial court's refusal to dismiss the indictment due to vindictive and retaliatory prosecution in violation of the due process rights established under the United States Constitution Fifth Amendment as well as established Federal law under United States Supreme Court Decisions.
> Supporting Facts:  Petitioner attaches 12 pages of "Factual and Legal Basis" supporting Ground Three. *Id.* at 30-42.
>
> GROUND FOUR: In the trial court's refusal to find S.C. Code Section 16-15-342 was unconstitutional under equal protection in violation of the United States Constitution Fourteenth Amendment as well as established Federal law under United States Supreme Court Decisions.
> Supporting Facts: Petitioner attaches 8 pages of "Factual and Legal Basis" supporting Ground Four. *Id.* at 42-49.
>
> GROUND FIVE:  The failure of the trial court to find that the speech in question was protected under the United States Constitution First Amendment, apply the chilled speech doctrine, and that S.C. Code Section 16-15-342 was being enforced unconstitutionally in violation of United States Constitution First Amendment as well as established Federal law under United States Supreme Court Decisions.
> Supporting Facts: Petitioner attaches 9 pages of "Factual and Legal Basis" supporting Ground Five. *Id.* at 49-57.
>
> GROUND SIX:  The failure of the trial court to apply the chilled speech doctrine of the United States Constitution First Amendment, since the State's sting operation was being conducted in adult chat rooms with no emphasis on minor children in violation of the United States Constitution First Amendment as well as established Federal law under the United States Supreme Court Decisions.

4

Supporting Facts: Petitioner attaches 2 pages of "Factual and Legal Basis" supporting Ground Six. *Id.* at 57-58.

B.  Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the

court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C.  Habeas Corpus Standard of Review

1.  Generally

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 397-98 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

a.  Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

"[E]ven a strong case for relief does not mean the state court's contrary conclusion was

unreasonable." *Id.* at 102. The Court further stated: "If this standard is difficult to meet, that is

because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir.

2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his

ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal

determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court
> decision was either (1) "contrary to . . . [clearly] established Federal law as
> determined by the Supreme Court of the United States," or (2) "involved an
> unreasonable application of . . . clearly established Federal law, as determined by
> the Supreme Court of the United States.

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly

established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the

Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v.*

*Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a

state-court decision is "contrary to" clearly established federal law, the federal court may not

grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme

Court on a legal question, the state court decided the case differently than the Court has on facts

that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the

facts of the prisoner's case." *Williams*, 529 U.S. at 405-13. The "unreasonable application"

portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or

erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

2. Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a. Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)     the applicant has exhausted the remedies available in the courts of the State; or

(B)     (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) *overruled on other grounds by U.S. v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by section 17-27-80 of the South Carolina Code, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C.

2007). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina

courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year

of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may

present only those issues that were presented to the South Carolina Supreme Court or the South

Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding

"that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not

be required to petition for rehearing and certiorari following an adverse decision of the Court of

Appeals in order to be deemed to have exhausted all available state remedies respecting a claim

of error") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief

Cases*, 471 S.E.2d 454, 454 (S.C. 1990)).

### b.      Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the

doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise

that issue at the appropriate time in state court and has no further means of bringing that issue

before the state courts. In such a situation, the person has bypassed his state remedies and, as

such, is procedurally barred from raising the issue in his federal habeas petition. Procedural

bypass of a constitutional claim in earlier state proceedings forecloses consideration by the

federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of

the state proceedings if the state has procedural rules that bar its courts from considering claims

not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second

appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a

direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply.  *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996)).

3.     Cause and Actual Prejudice

11

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

III.    Analysis

A.  Procedurally Barred Grounds

As an initial matter, the undersigned notes that Petitioner exhausted all habeas grounds by pursuing each allegation on direct appeal, as Respondent concedes. ECF No. 22 at 7. Further, the undersigned notes that all claims presented were direct appeal issues as Petitioner did not file a PCR action and raises no ineffective-assistance-of-counsel allegations. *Id.* Finally, Respondent concedes that no habeas ground is procedurally barred from review because Petitioner raised these issues to the state's highest court. *Id.* at 9. Therefore, the undersigned will address the merits of Petitioner's habeas grounds.

B.  Merits Analysis

1.       Ground One:  Trial Court Error-Judicial Notice of Petitioner's Age

In Ground One, Petitioner alleges the trial court erred in taking judicial notice of his age because age was an element of the crime for which Petitioner was charged and was "reserved for determination by the jury." ECF No. 1 at 6. Petitioner maintains that the trial court's action violated his right to be tried by a jury as guaranteed by the Constitution. *Id.* Moreover, Petitioner argues that "[t]he instruction of the trial court to the jury, 'that [Petitioner] was born on June 22, 1973. . . and that they shall not debate it', effectively directed a verdict of guilty on that element." *Id.* at 8. Petitioner posits that once commission of a constitutional error is shown, the court must first determine it if is subject to harmless error analysis, or is automatically reversible. *Id.* at 9 (citing *Sullivan v. Louisiana*, 508 U.S. 275 (1993); *Neder v. United States*, 527 U.S. 1 (1999)). Based on the *Sullivan* and *Neder* holdings, Petitioner argues that "the facts presented create a structural error in the trial and require automatic reversal. . . ." *Id.* Alternatively, Petitioner argues that should the court engage in a harmless error analysis, the case of *Chapman v. California*, 386 U.S. 18 (1967) would control, and the error would not be harmless because it "infected the entire trial as to what the jury's role was in this criminal case." *Id.* at 11-12.

Respondent argues that Petitioner is not entitled to relief because though the state court found error occurred, the error "proved harmless." ECF No. 22 at 15. Further, Respondent maintains that the standard for habeas relief as articulated in the case of *Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir. 1960), was not met in this case. *Id.* at 15-16. Respondent also points out that trial exhibits indicated Petitioner's age—thus, no prejudice resulted from the trial court's instruction. *Id.* at 16.

Initially, the undersigned considers whether any perceived error by the trial court warrants automatic reversal or is subject to the harmless review analysis. Petitioner cited the Supreme Court case of *Sullivan* in support of his position that the court should not have engaged

in the harmless error analysis. 508 U.S. 275. In *Sullivan*, the Supreme Court held that a constitutionally deficient reasonable-doubt jury instruction cannot be harmless error and the giving of a constitutionally deficient instruction required reversal of the conviction rather than a harmless error analysis. *Id.* In its analysis, the *Sullivan* Court relied on *Chapman v. California*, 386 U.S. 18 (1967), for the proposition that some but not all federal constitutional errors require reversal. *Id.* at 278-79. However, the Court found the following errors warrant automatic reversal: complete deprivation of counsel; right to a trial by an unbiased judge; and right to self-representation. *Id.* at 279. Moreover, the Court found:

> Insofar as the possibility of harmless-error review is concerned, the jury-instruction error in this case is quite different from the jury-instruction error of erecting a presumption regarding an element of the offense. A mandatory presumption—for example, the presumption that a person intends the ordinary consequences of his voluntary acts—violates the Fourteenth Amendment, because it may relieve the State of its burden of proving all elements of the offense.

*Id.* at 280. In conclusion, the *Sullivan* Court held that denial of the right to a jury verdict of guilt beyond a reasonable doubt is a structural defect for which the harmless-error analysis does not apply. *Id.* at 281. Petitioner also cited the Supreme Court case of *Neder v. United States*, 527 U.S. 1, in support of his proposition. However, the *Neder* Court held that the harmless-error rule of *Chapman v. California*, applies to a jury instruction that omits an element of an offense. *Id.* Further, the Supreme Court has found that most constitutional errors can be harmless and do not require automatic reversal. *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991); *see also Rose v. Clark*, 478 U.S. 570, 579 (1986) ("[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis.").

The undersigned is not persuaded by Petitioner's argument that the trial court's taking judicial notice of Petitioner's age or its instruction to the jury concerning presuming such an

element required automatic reversal. As the state appellate court found, an error occurred because the trial court partially took away the State's burden. However, the undersigned does not find this error is in the class of the cases articulated by the Supreme Court that require automatic reversal. Rather, like most cases where error occurred, the trial court's purported error is subject to the harmless-error analysis.

Here, as Respondent argues, Petitioner's age was presented into evidence in the form of witness testimony and in the form of a State's exhibit containing the text of the chat room conversation. Specifically, State's witness Officer Patterson testified that he identified himself in the online chatroom as a thirteen-year-old, and Petitioner "identified himself as a forty-year-old and he began asking questions of a sexual nature." ECF No. 22-4 at 182. Thereafter, the court allowed the State to introduce State's Exhibit 2, a printout of the online chat dated May 4, 2006, into evidence. *Id.* at 207. There, Petitioner indicated "40 m Columbia" when asked "asl" which is an acronym for age, sex, location. ECF No. 22-2 at 271. In addition to this evidence providing Petitioner's specific age, as Respondent indicates, the jury had the duration of the trial to observe Petitioner and make a determination as to whether he was over the age of 18. Therefore, the trial court's judicial notice of Petitioner's age was cumulative to other evidence presented in the state court proceedings and harmless. Accordingly, the undersigned finds that Petitioner has failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d) & (e)(1). As a result, the issue raised in Ground One is without merit and should be dismissed.

    2.    Ground Two: Trial Court Error-"Official Capacity" Instruction

In his second Ground, Petitioner contends the trial court erred in its instruction to the jury, after deliberations had begun, to disregard legal evidence. ECF No. 1-1 at 14. Additionally,

Petitioner represents that the "official capacity" of the investigating officer pursuant to section 16-15-342 of the South Carolina Code became a significant issue during Petitioner's trial. *Id.* at 15. Petitioner argued at trial that because the law requires every police officer to have a bond, and there was no evidence that the officer engaged in the chat with Petitioner had a bond, the officer was not acting in his official capacity. *Id.* at 18-20. Respondent clarifies that in Petitioner's argument he asserts that the trial court violated Petitioner's constitutional rights by instructing the jury not to consider in its deliberations any legal argument that a police officer is required have a bond. ECF No. 22 at 18.

In full, Section 16-15-342 provides:

(A) A person eighteen years of age or older commits the offense of criminal solicitation of a minor if he knowingly contacts or communicates with, or attempts to contact or communicate with, a person who is under the age of eighteen, or a person reasonably believed to be under the age of eighteen, for the purpose of or with the intent of persuading, inducing, enticing, or coercing the person to engage or participate in a sexual activity as defined in Section 16-15-375(5) or a violent crime as defined in Section 16-1-60, or with the intent to perform a sexual activity in the presence of the person under the age of eighteen, or person reasonably believed to be under the age of eighteen.
(B) Consent is a defense to a prosecution pursuant to this section if the person under the age of eighteen, or the person reasonably believed to be under the age of eighteen, is at least sixteen years old.
(C) Consent is not a defense to a prosecution pursuant to this section if the person under the age of eighteen, or the person reasonably believed to be under the age of eighteen, is under the age of sixteen.
(D) It is not a defense to a prosecution pursuant to this section, on the basis of consent or otherwise, that the person reasonably believed to be under the age of eighteen is a law enforcement agent or officer acting in an official capacity.
(E) A person who violates the provisions of this section is guilty of a felony and, upon conviction, must be fined not more than five thousand dollars or imprisoned for not more than ten years, or both.

Here, Petitioner is arguing that the state court misapplied a state law to the facts of his case. In the case of *Anderson v. Harless,* 459 U.S. 4, 6 (1982), the Supreme Court held that a habeas claim was barred because it was plain from the record that a constitutional argument was

never presented to, or considered by, the state court. The undersigned finds this issue is not cognizable on federal habeas review because it concerns a state court's interpretation of a state law and Petitioner is not arguing some type of federal or constructional error occurred. *See e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding violations of state law and procedure that do not implicate specific federal constitutional provisions are not cognizable in habeas review); *Engle v. Isaac*, 456 U.S. 107, 119 (1982) (holding petitioner did not allege a deprivation of federal rights based his challenge to the correctness of the self-defense charge given during his trial).

Even if this claim were deemed cognizable, the undersigned finds there is no way determine whether error occurred in the trial court's instruction without interpreting South Carolina law. In some instances, jury charge instruction can implicate federal rights. *See e.g., Cupp v. Naughten,* 414 U.S. 141, 147 (1973) (holding that in order for an erroneous instruction to support a collateral attack on a state court's judgment, it must be shown to have "so infected the entire trial that the resulting conviction violates due process."). However, the undersigned finds that interpreting "official capacity" under section 16-15-342(D) would go outside the province of tasks for this court's habeas review. Accordingly, Petitioner has failed to state a claim upon which federal habeas relief can be granted in this claim, and the undersigned recommends denying and dismissing Ground Two with prejudice.

            3.     Ground Three: Trial Court Error-Vindictive and Retaliatory Prosecution

In his third argument to the court, Petitioner argues that his constitutional rights were violated because the trial court refused "to dismiss the indictment due to vindictive and retaliatory prosecution. . . ." ECF No. 1-1 at 30. Further, Petitioner argues that prosecutorial vindictiveness/retaliation was shown through direct evidence or at least clearly sufficient

evidence to create a presumption of vindictiveness that was in turn not rebutted by the State. *Id.* Additionally, Petitioner maintains that the trial court's findings that actual malice or implied malice were not established were clearly erroneous because the trial court based its finding on "the wrong legal standard of malice. . . ." *Id.*

Respondent argues that a habeas claim concerning vindictive prosecution "will not garner relief unless this Court determines the state appellate court's denial of the same claim was contrary to federal law." ECF No. 22 at 24. Additionally, Respondent maintains that the state court's decision on this issue was "based upon a reasonable application of the relevant federal law on this topic." *Id.* at 29. Moreover, Respondent contends that "the record sufficiently supports the state court's application of the relevant federal law on this issue." *Id.* at 36.

Prior to Petitioner's criminal trial, he moved to have his case dismissed based on prosecutorial misconduct. ECF No. 22-4 at 39. Assistant Attorney General Megan Wines testified that when she became involved in the case, she was following the trial strategy of her predecessor. *Id.* at 85. However, later Attorney Wines testified that based on several occurrences in the case she decided to change the trial strategy once she became the lead attorney. *Id.* at 86-92. After hearing all pre-trial arguments, the trial court denied Petitioner's Motion to Dismiss. ECF No. 22-7 at 5-6. Specifically, the trial court indicated:

> I'm gonna remain with my ruling on the prosecutorial vindictiveness. Quite frankly, it was a close call, but I don't find that there was established any actual malice or evidence that would rise to an implied malice or vindictiveness. I think under the circumstances the explanation given by the State was reasonable, and given the wide discretion given to prosecutors, the evidence doesn't amount to the level that would give rise to the draconian remedy of dismissing the warrants. So, therefore, I'm denying that motion.

*Id.* at 6. In its review of the trial court's decision, the South Carolina Supreme Court found no error occurred. ECF No. 22-12 at 3. In its opinion, the Supreme Court recited the procedural history of the case and found:

> Initially, the State sought to indict Appellant for his conversations with an undercover officer in Spartanburg County. It was not the State's original intent to indict Appellant for his conversations with Officer Patterson in Oconee County that are the subject of this appeal. Rather, the AG's strategy was to try Appellant in Spartanburg County on other similar charges, and use the evidence gathered in the Oconee investigation as "prior bad acts" evidence in the Spartanburg trial.

> Appellant was indicted in Spartanburg County on June 22, 2006. During pre-trial motions, the court suppressed all of the evidence obtained by the ICAC Task Force pursuant to 18 U.S.C. §§ 2703(d) (stating requirements for court orders to procure stored electronic communications) and 3127(2)(B) (2006) (permitting state criminal courts to "enter orders authorizing the use of a pen register or a trap and trace device"). The State appealed this ruling, and on March 30, 2009, this Court reversed. *See State v. Odom*, 382 S.C. 144, 676 S.E.2d 124 (2009). The State planned to proceed with the Spartanburg trial in August 2009.

> In June 2009, Officer Patterson, lead investigator in the Oconee County case, was dismissed from the police department. Officer Patterson was arrested in connection with a dispute with his ex-wife, a charge that was ultimately dismissed. Because the State planned to use evidence from the Oconee investigation in the Spartanburg trial, Appellant's defense counsel in that trial, James Huff, attempted to subpoena Patterson's personnel records, including his arrest records.

> Before the Spartanburg trial began, the State notified Appellant that it planned to seek separate indictments in Oconee County. The Spartanburg trial began on February 22, 2010, and resulted in a mistrial due to a hung jury on March 2, 2010. On April 12, 2010, a grand jury true billed the indictments in Oconee County. Appellant asserted that the State chose to prosecute him on the Oconee County charges in retaliation for counsel Huff's attempts to obtain the Patterson records in the Spartanburg trial.

> The trial court held a pre-trial hearing on Appellant's vindictive prosecution motion. At the hearing, Huff stated that on February 16, 2010, he spoke to lead prosecutor Megan Wines on the telephone regarding the Patterson arrest records, during which Wines told Huff that she had instructed Patterson's criminal defense attorney to refuse to relinquish the records to Huff because she did not believe that Huff had the authority to subpoena the information. Wines also indicated that she was frustrated by Huff's pursuit of these records.

Huff further stated that he again discussed the matter of the records with Wines two days later. Huff stated that Wines again indicated that she was unhappy with him for pursuing the Patterson arrest records because she felt they were irrelevant to the Spartanburg charges. Huff related that, as a consequence of his pursuit of the records, Wines told him, "Fine. We'll just indict [Appellant] in Oconee." Thus, Huff believed that the AG belatedly chose to indict Appellant in Oconee because Huff subpoenaed Patterson's records in the Spartanburg trial. According to Huff, from the time of Appellant's arrest until the second conversation with Wines, he received no indication from the AG's office that the AG planned to prosecute Appellant in Oconee County.

In contrast, Wines stated that she initially thought to use the Oconee charges as *Lyle* evidence in the Spartanburg trial in furtherance of the trial strategy devised by her predecessor, Solicitor Stumbo. However, prior to the call of the case in Spartanburg, she changed her mind because she felt that using the charges in such a way was complicating matters in the Spartanburg trial, and that Patterson's arrest was "too collateral an issue" to deal with in the Spartanburg case. She was also worried that the subpoena issue would further delay the start of the Spartanburg trial, which had already been delayed numerous times, including for the appeal of the pre-trial evidentiary ruling. Therefore, Wines claimed she decided to pursue indictments in Oconee County, where Patterson led the investigation, and where his arrest records would be more directly relevant. She further testified that another change in strategy was to seek separate indictments for each conversation due to the mistrial in Spartanburg where a single indictment for all of the conversations resulted in confusion for the jury.

While Wines admitted that she was irritated with Huff for serving subpoenas that she did not believe he had the authority to pursue, Wines testified that her decision to seek the indictments in Oconee County ultimately came down to a change in trial strategy:

> And I was frustrated that the matter had come to Judge Hayes ordering that we would have a hearing on attorney/client privilege with regard to Mark Patterson's records which were not instrumental to the Spartanburg trial.... There was gonna [sic] be potential *Lyle* evidence, and I don't know that we would have ever gotten it in. So it made sense to me at that point that I believe separate crimes had been committed, it made sense to change trial strategy and to go ahead and have those sent to the Oconee County Grand Jury, which was done in May.
> 
>                              . . . .

"It is a due process violation to punish a person for exercising a protected statutory or constitutional right." *State v. Fletcher,* 322 S.C. 256, 259–60, 471 S.E.2d 702, 704 (Ct. App. 1996) (citing *United States v. Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)); *see also United States v. Wilson,* 262 F.3d 305, 314 (4th Cir. 2001) (stating if a prosecutor "responds to a defendant's successful exercise of his right to appeal by bringing a more serious charge

against him, he acts unconstitutionally"); *United States v. Lanoue,* 137 F.3d 656, 664–65 (1st Cir. 1998) (stating that such retaliatory conduct amounts to vindictive prosecution and "violates a defendant's Fifth Amendment right to due process"). On a claim of vindictive prosecution, courts generally "review the [trial court's] legal conclusions *de novo* and its findings of fact for clear error." *United States v. Jarrett,* 447 F.3d 520, 524 (7th Cir. 2006) (citing *United States v. Falcon,* 347 F.3d 1000, 1004 (7th Cir. 2003)). "A claim of prosecutorial vindictiveness turns on the facts of each case." *People v. Hall,* 726 N.E.2d 213, 220 (Ill. App. Ct. 2000).

Courts will "reverse a conviction that is the result of a vindictive prosecution where the facts show an actual vindictiveness or a sufficient likelihood of vindictiveness to warrant . . . a presumption [of vindictiveness]." *Barrett v. Virginia,* 585 S.E.2d 355, 365 (Va. Ct. App. 2003) (citations omitted), *aff'd,* 597 S.E.2d 104 (Va. 2004).

"To demonstrate actual vindictiveness, a defendant must show that the government harbored 'vindictive animus' and that the superseding indictment was brought '*solely* to punish' him." *United States v. Bell,* 523 Fed. App'x. 956, 959 (4th Cir. 2013) (quoting *Wilson,* 262 F.3d at 316). In other words, to prove a claim of actual vindictiveness, "a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *Wilson,* 262 F.3d at 314 (citations omitted); *see also United States v. Sanders,* 211 F.3d 711, 716–17 (2d Cir. 2000) ("To establish an actual vindictive motive, a defendant must prove objectively that the prosecutor's charging decision or the resultant indictments were a direct and unjustifiable penalty, that resulted solely from the defendant's exercise of a protected legal right." (internal citations and quotation marks omitted)).

> Accordingly, while the prosecutor's charging decision is presumptively lawful, and the prosecutor is not required to sustain any burden of justification for an increase in charges, the defendant is free to tender evidence to the court to support a claim that enhanced charges are a direct and unjustifiable penalty for the exercise of a procedural right. Of course, only in a rare case would a defendant be able to overcome the presumptive validity of the prosecutor's actions through such a demonstration.

*Goodwin,* 457 U.S. at 384 n. 19, 102 S.Ct. 2485 (internal quotation marks omitted).

Likewise, a presumption of vindictiveness may arise if a criminal defendant establishes that "circumstances surrounding the initiation of the prosecution . . . 'pose[d] a realistic likelihood of vindictiveness.'" *Wilson,* 262 F.3d at 317 (quoting *Blackledge v. Perry,* 417 U.S. 21, 27 (1974)). "If the defendant creates a presumption of vindictiveness the burden shifts to the government to show that

legitimate reasons exist for the prosecution." *Barrett,* 585 S.E.2d at 365 (citations omitted). When determining if a presumption of vindictiveness is warranted,

> the appropriate inquiry is whether . . . for example, where, after the defendant's prior exercise of a procedural or substantive legal right, or his having succeeded in reversing a conviction on appeal, the prosecution acts arguably to punish the exercise of such rights, by increasing the measure of jeopardy by bringing additional or more severe charges, or where the judge assesses a larger penalty upon subsequent conviction for the same offense following an earlier reversal.

*United States v. Ward,* 757 F.2d 616, 619–20 (5th Cir. 1985).

Despite the prosecutor's candid omission that she was irritated with Huff, we find Appellant has fallen far short of presenting evidence tending to show that vindictiveness played any role in the decision to prosecute the Oconee County charges. We join the able trial judge in rejecting the claim of vindictiveness under these circumstances. In so holding, we note that a defendant asserting prosecutorial misconduct carries a "heavy burden of proving that the ... prosecution 'could not be justified as a proper exercise of prosecutorial discretion.' " *Wilson,* 262 F.3d at 316 (quoting *Goodwin,* 457 U.S. at 380 n. 12); *see State v. Dawkins,* 297 S.C. 386, 389, 377 S.E.2d 298, 300 (1989) ("[A]n initial decision by the prosecutor should not freeze future conduct, because the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution."); *see also Goodwin,* 457 U.S. at 382 ("A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution."); *United States v. Esposito,* 968 F.2d 300, 306 (3d Cir. 1992) ("We will not apply a presumption of vindictiveness to a subsequent criminal case where the basis for that case is justified by the evidence and does not put the defendant twice in jeopardy. Such a presumption is tantamount to making an acquittal a waiver of criminal liability for conduct that arose from the operative facts of the first prosecution. It fashions a new constitutional rule that requires prosecutors to bring all possible charges in an indictment or forever hold their peace . . . . We reject such a proposition for it undermines lawful exercise of discretion as well as plain practicality."); *cf. State v. Langford,* 400 S.C. 421, 435 n. 6, 735 S.E.2d 471, 479 n.6 (2012) (stating a prosecutor "has discretion in choosing how to proceed with a case, including whether to prosecute in the first place and whether he brings it to trial or offers a plea bargain.").

ECF No. 22-12 at 3-9. Here, the essence of Petitioner's argument is that the trial court used the wrong legal standard concerning malice required to demonstrate vindictiveness. ECF No. 1-1 at 30-31. Specifically, Petitioner maintains that the trial court's findings that actual malice or

22

implied malice were not established were clearly erroneous because the trial court based its finding on "the wrong legal standard of malice. . . ." *Id.* Petitioner cites to the Supreme Court case of *Blackledge v. Perry*, 417 U.S. 21 (1974), and the Fourth Circuit Court of Appeals' case of *United States v. Wilson*, 262 F.3d 305 (2001), in support of his assertion. *Id.*

In *Blackledge*, the Court held that the Due Process Clause of the Fifth Amendment prohibits the Government from bringing more serious charges against a defendant after he has appealed and invoked his right to a jury trial, unless the prosecutor comes forward with objective evidence to show that the increased charges could not have been brought before the defendant exercised his rights. 417 U.S. at 28-29. The *Wilson* court recognized that it is a due process violation to punish a defendant for doing what the law plainly entitles him to do. 262 F.3d at 314. Further, the *Wilson* court cited to *Blackledge* for the proposition that "if a prosecutor responds to a defendant's successful exercise of his right to appeal by bringing a more serious charge against him, he acts unconstitutionally." *Id.* The Fourth Circuit articulated the following test that establishes prosecutorial vindictiveness: "(1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *Id.* However, the court noted that in certain instances the presumption of vindictiveness is warranted. *Id.* at 315; 318-19. Ultimately the Fourth Circuit held that the facts in Wilson's case did not warrant a presumption of vindictiveness where the government charged Wilson with escape following his successful appeal from his firearm-possession conviction. *Id.* at 319. Essentially, the court held that "[u]nlike the typical presumption case, where a defendant's successful appeal necessitates a retrial on the same charge, Wilson's successful suppression of the weapon on his appeal means he cannot be retried on that charge." *Id.*

Essentially, Petitioner is arguing that his case is akin to the facts presented in *Blackledge* and *Wilson* which require the court to apply a presumption of vindictiveness when certain rights are exercised by a defendant. ECF No. 1-1 at 30-31. Specifically, Petitioner asserts that "no evidence of actual bad faith or malice is necessary to establish prosecutorial vindictiveness." The undersigned disagrees. Based on certain Supreme Court holdings, the undersigned finds that the State's actions prior to Petitioner's trials cannot invoke presumptions of vindictiveness. Petitioner's case is more akin to the facts presented in the United States Supreme Court cases of *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), and *United States v. Goodwin*, 457 U.S. 368 (1982).

In the case of *Bordenkircher*, the Supreme Court held that a presumption of vindictiveness was not warranted in a pre-trial setting of plea bargaining. 434 U.S. at 362. There, the prosecutor carried out a threat, made during plea negotiations, to bring additional charges against an accused who refused to plead guilty to the offense with which he was originally charged. *Id.* at 358-59. Therefore, the prosecutor's decision to bring additional charges after plea negotiations ended in a stalemate was distinct from situations where a defendant chose to exercise a legal right to attack his original conviction. *Id.* at 362-63. There, the court noted that in the context of plea-bargaining, the government and the defendant have "the mutuality of advantage." *Id.* at 363. Further, the Court reasoned: "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id.* at 364.

The *Goodwin* Court relied on the *Bordenkircher* holdings to uphold convictions, 457 U.S. 368, and found that the timing of a prosecutor's actions suggests whether a presumption attaches.

*Id.* at 381-82. There, Goodwin was charged with certain misdemeanor charges and arraigned before a U.S. Magistrate Judge. *Id.* at 370. After he requested a jury trial, his case was transferred to the District Court where the Government obtained a four-count indictment, including a felony charge. *Id.* at 371. Ultimately, Goodwin was convicted on one felony count and one misdemeanor count. *Id.* In its review of Goodwin's case, the Supreme Court held: "A prosecutor should remain free *before trial* to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution." *Id.* at 382 (emphasis added). Therefore, Goodwin's assertion of his right to a jury trial, which forced the Government to "bear the burdens and uncertainly of a trial" did not warrant the presumption of vindictiveness. *Id.* Further, the *Goodwin* Court reasoned "a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision." *Id.* at 381.

Here, it is undisputed that the State brought additional charges against Petitioner before the Spartanburg case proceeded to trial. In other words, prior to Petitioner's Spartanburg trial, there was a "change in the [State's] charging decision." As the South Carolina Supreme Court found in its decision, "prior to the call of the case in Spartanburg, [the prosecutor] changed her mind. . . ." ECF No. 22-12 at 5. Therefore, based on the undisputed timing of the State's decisions concerning how many charges to bring against Petitioner (not what charges to bring or the severity of the charge), there can be no presumption of vindictiveness. Accordingly, the undersigned finds the South Carolina Supreme Court used the correct legal standard in determining whether vindictive prosecution occurred. *See id.* at 3-9. Furthermore, the undersigned finds the appellate court, in its de novo review, accurately recounted and assessed the evidence contained in the record. *See id.* Based on these findings, Petitioner has failed to

demonstrate that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d) & (e)(1). As a result, the undersigned finds that Ground Three is without merit and should be dismissed.

    4.  Ground Four: Trial Court Error-Constitutionality of S.C. Code § 16-15-342 under Equal Protection

   In his fourth argument to the court, Petitioner argues that his constitutional rights were violated because the trial court refused to find that section 16-15-342 of the South Carolina Code was unconstitutional. ECF No. 1-1 at 42. Petitioner maintains that section 16-15-342 is a violation of the equal protection clauses under the state and federal constitutions. *Id.* Specifically, Petitioner asserts that sections 16-15-342(B) and 16-15-342 (D) do not treat "two similarly situated individuals remotely the same." *Id.* at 44.

   Respondent argues that "[t]his code section does not violate the Equal Protection Clause as purported because there is a clear rational basis for distinguishing between the solicitation of a law enforcement officer and the solicitation of another person over the age of sixteen who is not involved in law enforcement." ECF No. 22 at 37. Further, Respondent maintains that "the Legislature's reason for removing the consent defense when the solicitee is a law enforcement officer, over the age of sixteen, is to 'assist in undercover operations.'" *Id.* at 37-38. Additionally, Respondent asserts that as "long as the statute at issue 'does not implicate a suspect class or abridge a fundamental right, the rational basis test is used' to determine whether the classification falls into the prohibited group." *Id.* at 38.

   The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The purpose of the Clause is to keep "governmental decisionmakers from

26

treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir. 2001). When asserting an equal protection claim, to survive summary judgment, a plaintiff must first have evidence to demonstrate that "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination," and, if so, the court must then determine whether the disparate treatment is "reasonably related to any legitimate penological interest." *Cunningham,* 2013 WL 6834599, at *2 (citing *Veney v. Wyche,* 293 F.3d 726, 730–32 (4th Cir. 2002)).

Assuming Petitioner has demonstrated that he was treated differently from others with whom he is similarly situated, the undersigned finds that Petitioner has failed to demonstrate that Petitioner's alleged unequal treatment was the result of intentional or purposeful discrimination. Even if Petitioner was able to meet this initial hurdle, according to the Supreme Court, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Furthermore, "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996). Here, Petitioner is not part of a "suspect class." *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 313 (1976). Furthermore, South Carolina has articulated that the purpose of section 16-15-342 of the South Carolina Code "is to allow the investigation and criminalization of harm to minors caused when they are solicited for sexual acts or to commit crimes." ECF No. 22 at 40.

27

The South Carolina Supreme Court briefly addressed Petitioner's equal protection and free speech issues (which are Petitioner's fifth and sixth habeas grounds) in the same section of its opinion. ECF No. 22-12 at 12. There, the court found:

> Appellant finally contends that section 16–15–342 of the South Carolina Code violates his rights to equal protection and free speech and is unconstitutional. We disagree and affirm pursuant to Rule 220(b)(1), SCACR, and the following authorities: *State v. Gaster*, 349 S.C. 545, 549–50, 564 S.E.2d 87, 89–90 (2002) ("When the issue is the constitutionality of a statute, every presumption will be made in favor of its validity and no statute will be declared unconstitutional unless its invalidity appears so clearly as to leave no doubt that it conflicts with the constitution."); *see Bodman v. State*, 403 S.C. 60, 69, 742 S.E.2d 363, 367 (2013) ("A classification will survive rational basis review when it bears a reasonable relation to the legislative purpose sought to be achieved, members of the class are treated alike under similar circumstances, and the classification rests on a rational basis." (citation omitted)); *State v. Green,* 397 S.C. 268, 277–78, 724 S.E.2d 664, 668 (2012) (rejecting a First Amendment challenge to section 16–15–342 and noting that "[c]ourts have recognized that speech used to further the sexual exploitation of children does not enjoy constitutional protection." (quotation omitted)).

*Id.*

The undersigned finds the appellate court's decision on the equal protection issue was not an unreasonable application of federal law. Additionally, the undersigned finds that Petitioner has failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d) & (e)(1). As a result, the undersigned finds that Ground Four is without merit and should be dismissed.

        5.       Grounds Five and Six: Trial Court Error-Constitutionality of Speech

In Ground Five, Petitioner argues that section 16-15-342 of the South Carolina Code violates the First Amendment because his free speech rights have been infringed. ECF No. 1-1 at 49-50. Further, he maintains that the Chilled Speech Doctrine should apply in this case. *Id.* In Ground Six, Petitioner maintains:

> The State, by going into a known adult chat room for such investigation chills lawful speech under threat of prosecution, such as role-play, age-play, or cybersex. Adults have the right to pretend to be any age and engage in any such chat as they wish. The presence of investigations in such rooms chills huge swaths of protected speech and makes such speech less likely where few would risk the chance of prosecution for engaging in this protected speech. As such, under the "chilled speech" doctrine the conduct of the investigation due to the State's interpretation of the statute is unconstitutional.

*Id.* at 58 (citing *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002)).

Respondent argues that there is no First Amendment right to solicit sexual activity from a minor. ECF No. 22 at 44. Further, Respondent maintains that "[h]abeas relief should be denied where a Constitutional challenge to the solicitation of a minor statute fails due to the state statute's regulation of illegal *conduct*. *Id.* at 45 (emphasis in Return). Additionally, Respondent argues that the statute at issue is narrowly tailored to not violate the Free Speech Clause. *Id.* at 46. The undersigned agrees.

"[A] statute that is substantially overbroad may be invalidated on its face." *Houston v. Hill,* 482 U.S. 451, 458 (1987). A statute may be overbroad "if in its reach it prohibits constitutionally protected conduct." *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972). Such an invalid statute proscribes so much protected speech that it must be struck down entirely. *Am. Life League, Inc. v. Reno*, 47 F.3d 642, 652-53 (4th Cir. 1995). To determine whether a statute is overbroad, the Court must determine "whether the [statute] sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments." *Grayned*, 408 U.S. at 114-15. The overbreadth doctrine is "strong medicine" to be applied "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). Here, Petitioner alleges that the criminal statute at issue criminalizes otherwise lawful speech.

The United States Supreme Court has not addressed the issue of free speech in the context of criminal solicitation of a minor directly. However, several circuit courts of appeal

have squarely addressed the issue and held that there is no First Amendment right to solicit sexual activity from a minor. *See e.g., United States v. Gagliardi*, 506 F.3d 140, 148 (2d Cir. 2007) ("[T]here is likewise no First Amendment right to persuade one whom the accused believes to be a minor to engage in criminal sexual conduct."); *United States v. Tykarsky*, 446 F.3d 458, 473 (3d Cir. 2006) ("There is no First Amendment right to persuade minors to engage in illegal sex acts.); *United States v. Hornaday,* 392 F.3d 1306, 1311 (11th Cir. 2004) ("Speech attempting to arrange the sexual abuse of children is no more constitutionally protected than speech attempting to arrange any other type of crime."); *United States v. Meek*, 366 F.3d 705, 721 (9th Cir. 2004) ("The inducement of minors to engage in illegal sexual activity enjoys no First Amendment protection."); *United States v. Bailey*, 228 F.3d 637 (6th Cir. 2000) ("Put another way, the Defendant simply does not have a First Amendment right to attempt to persuade minors to engage in illegal sex acts.").

Concerning Petitioner's argument that section 16-15-342 of the South Carolina Code chills otherwise protected speech, the *Meek* court held there is a safeguard against a chilling effect in a similar statute. 366 F.3d at 721. There, the Ninth Circuit Appellate Court held: "The potential for unconstitutional chilling of legitimate speech disappears because § 2422(b) requires the prosecution to prove that a defendant actually knows or believes that the specific target of the inducement is a minor." *Id.* Section 16-15-342 criminalizes conduct for a person 18 years of age or older when the individual "knowingly contacts or communicates with, or attempts to contact or communicate with, a person who is under the age of eighteen, or a person reasonably believed to be under the age of eighteen, for the purpose of or with the intent of persuading, inducing, enticing, or coercing the person to engage or participate in a sexual activity. . . or with the intent to perform a sexual activity in the presence of the person under the age of eighteen, or person

reasonably believed to be under the age of eighteen." The undersigned finds that section 16-15-342 does not criminalize any protected First Amendment Speech. Further, based on the safeguard of the statute, as articulated in *Meek*, the undersigned finds there is no danger that purported protected speech between adults—role-play, age-play, or cybersex—will be chilled. Therefore, the undersigned finds that Petitioner's First Amendment challenge to section 16-15-342 fails.

In reaching this conclusion, the undersigned has considered the case of *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). However, the Court's holdings in *Ashcroft* are distinct from the facts of Petitioner's case and do not change the undersigned's recommended disposition of this habeas Petition. In *Ashcroft*, the Supreme Court considered whether the Child Pornography Prevention Act of 1996 ("CPPA") violated the First Amendment. *Id.* at 239-40. Ultimately, the Supreme Court held that the Act violated the First Amendment because it chilled otherwise protected speech, such as sexually explicit images that appeared to depict minors but that were produced without using actual minors. *Id.* at 244-49. The *Ashcroft* Court held that there is no underlying crime being committed in the production of virtual child pornography. *Id.* at 249-50. Therefore, the Court found that the ban on virtual child pornography in the CPPA abridges the freedom to engage in a substantial amount of lawful speech, and thus was overbroad. *Id.* at 252-58.

*Ashcroft* is distinguishable from Petitioner's case in several respects—namely, the statute in *Ashcroft* attempted to prohibit constitutionally protected speech. Here, as explained above, section 16-15-342 does not prohibit constitutionally protected speech but punishes individuals for the solicitation or intent to solicit minors for sexual activity. Therefore, the undersigned finds the South Carolina Supreme Court's decision on the First Amendment issue was not an

unreasonable application of federal law. Additionally, the undersigned finds that Petitioner has failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d) & (e)(1). As a result, the undersigned finds that Grounds Five and Six are without merit and should be dismissed.

IV.     Conclusion and Recommendation

Wherefore, based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 23, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

May 3, 2016                                    Kaymani D. West
Florence, South Carolina                       United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**