## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Anthony Clark Odom, | ) | C/A No. 5:15-03249-MBS |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Jerry B. Adger, Director | ) | |
| South Carolina Department of | ) | |
| Probation, Parole, and Pardon | ) | |
| Services, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Anthony Clark Odom ("Petitioner") is in the custody of the South Carolina Department of Probation, Parole, and Pardon services, serving five years of probation following a conviction for criminal solicitation of a minor in violation of S.C. Code § Ann.16-15-342. On August 14, 2015, Petitioner filed a petition for writ of habeas corpus ("Habeas Petition") pursuant to 28 U.S.C. § 2254, alleging a violation of his rights protected by the United States Constitution. ECF No. 1.

### I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This habeas petition is before the court concerning criminal charges associated with Petitioner's conduct in internet chat rooms from March 12, 2006, through May 4, 2006. ECF No. 22 at 1. Specifically, Petitioner was charged with soliciting sexual activity from individuals he thought to be minors, but were law enforcement officers posing as minors. ECF. No. 22 at 2.

On June 22, 2006, Petitioner was indicted on one count of criminal solicitation of a minor under S.C. Code Ann. § 16-15-342 (Supp. 2006) in Spartanburg County, South Carolina. ECF No. 22 at 1. Petitioner's motion to suppress evidence was granted during pretrial motions. *Id.*

The state appealed the suppression, and on March 30, 2009, the South Carolina Supreme Court overturned the order to suppress and remanded the case. *State v. Odom*, 676 S.E.2d 124 (S.C. 2009). The Spartanburg case proceeded to trial before the Honorable J. Mark Hayes, II, in February 2010, ending with a mistrial due to a deadlocked jury. ECF No. 22 at 2; *see also* ECF No. 22-1 at 183.

On April 12, 2010, Petitioner was indicted and charged with two counts of criminal solicitation of a minor for chat room communications occurring May 4, 2006, through May 6, 2006, in Oconee County, South Carolina. The case went to trial on June 1, 2011; however, the Honorable Alexander S. Macaulay subsequently recused himself from the action before the jury was sworn. ECF No. 22-4 at 131-33. On November 1, 2011, the case was called for trial again, this time before the Honorable R. Lawton McIntosh. *Id*. at 134.

Prior to trial, Petitioner moved to dismiss based on prosecutorial vindictiveness, equal protection violations, and First Amendment grounds. ECF. No. 22-5 at 31. On November 8, 2011, the trial judge held a hearing to address these matters. *Id*. The trial judge denied the motion to dismiss on First Amendment grounds determining that Petitioner had no First Amendment right to engage in sexual adult oriented language with children. *Id*. at 35. The trial judge dismissed the equal protection grounds, holding that there is a rational basis for the different treatment of individuals under the state statute. *Id*. at 35.

The trial judge then took up the issue of prosecutorial vindictiveness, an issue that had originally been heard pretrial before Judge Macaulay on June 27, 2011. ECF No. 22-4 at 8. At the June 27, 2011, hearing, Petitioner argued that the decision to bring charges in Oconee Country was solely based on the prosecutor's annoyance with him. ECF No. 22-4 at 89. Petitioner presented the testimony of his trial counsel who, detailed conversations that he had

with the lead prosecutor in which she displayed irritation with Petitioner and his attorney as they were seeking court documents concerning the dismissal of Officer Patterson from the police force. *Id.* Petitioner was charged with chat room conversations with Officer Patterson, an Oconee County police officer that Petitioner believed was a minor. Trial counsel detailed that during these conversations, the prosecutor declared that she would just bring charges in Oconee Country as well. *Id.* at 88. It was Petitioner's belief that the prosecutor's office never intended to bring charges in the Oconee case, but only did so after Petitioner sought the dismissal documents of Officer Patterson.

In her defense, the prosecutor presented oral arguments in opposition to the vindictive prosecution claims before the trial judge on November 8, 2011. ECF No. 11-18. The prosecutor credited the decision to bring additional charges in Oconee County to a change in trial strategy. *Id.* She pointed out that the original Spartanburg indictment was filed in 2007, where trial was delayed until 2010 due to the appeal on the motion to suppress core pieces of evidence. ECF No. 22 at 30-31. The prosecutor also argued that there was a change in the prosecutor's leadership during this time. ECF No. 22-6 at 18-21. Finally, the prosecutor asserted that the State's office had never foreclosed the opportunity to bring the charges in Oconee County. ECF No. 22-6 at 21.

The trial judge determined that Petitioner had not shown that the State acted with genuine animus toward him or that he would not have been prosecuted but for that animus. When ruling on Petitioner's pretrial vindictive prosecution motion, the trial judge stated:

> Quite frankly, it was a close call, but I don't find that there was established any malice or evidence that would rise to an implied malice or vindictiveness. I think under the circumstances the explanation given by the State was reasonable, and given the wide discretion given to prosecutors, the evidence doesn't amount to the level that would give rise to the draconian remedy of dismissing the warrant. So therefore, I'm denying the motion.

ECF No. 22-7 at 6.

During trial, the State presented evidence of Petitioner's age, which is an element of the offense of criminal solicitation of a minor. First, the State called Officer Patterson, who stated that during the chat room conversations at issue, Petitioner "identified himself as a forty-year-old and he began asking questions of a sexual nature." ECF No. 22-4 at 182. Next, the trial judge allowed the State to introduce into evidence State's Exhibit 2, a printout of the online chat room conversations dated May 4, 2006. ECF No. 22-5 at 9. Petitioner responded "40 m Columbia" when asked "asl", which is an acronym for age, sex and location. ECF. No. 22-2 at 271. Moreover, when asking the trial judge to take judicial notice of Petitioner's age, the State provided certified records from the South Carolina Department of Motor Vehicles indicating Petitioner's date of birth. ECF No. 22-12 at 9. The trial judge took judicial notice of Petitioner's age.

Petitioner next objected that Officer Patterson was not acting in his "official capacity" as required by Section 16-15-342. Petitioner's trial counsel sought to show that a police officer must be bonded to be acting in his "official capacity" when monitoring chat rooms for illegal conduct. Petitioner's trial counsel presented the testimony of a city clerk, Jennifer Adams, who said that she did not believe that Officer Patterson had been bonded. ECF No. 22-1 at 123. Petitioner's trial counsel also presented the testimony from Chief Bannister, chief of police, who said that he believed that all municipal officers are to be bonded under oath. *Id*. at 88-90. In the end, Petitioner was allowed by the trial judge to argue, during closing arguments, that at the time of the offense, Officer Patterson was not bonded, and therefore not acting in his "official capacity." *Id*.at 155-56.

During deliberations, the jury wrote a note asking, "If an officer is not bonded, are they considered an official police officer?" ECF No. 22-8 at 46. The trial judge did not instruct on the law of bond or official capacity and instead instructed the jury that they could not deliberate concerning whether the officer needed to be bonded to be in his official capacity because the law of "bond" was not addressed during trial. *Id*. at 48.

The jury found Petitioner guilty of one count of criminal solicitation of a minor and not guilty on the other count of criminal solicitation of a minor. ECF No. 22-9 at 9. Petitioner was instructed to register as a sex offender and was sentenced to seven years imprisonment, suspended upon five years of probation. *Id*. at 11. Petitioner timely filed a motion for new trial on November 21, 2011. The motion was denied on January 3, 2012. ECF No. 22-1 at 5.

Petitioner's appellate counsel, Brian McDaniel, Esquire, filed a direct appeal to the South Carolina Supreme Court in which he raised the following issues:

I. Was it constitutional, and not subject to harmless error, for the trial court to (A) take conclusive judicial notice of an element of the crime charged, and (B) instruct the jury, during jury deliberations, to disregard evidence on the element of "Official Capacity"?
   A. The trial court's unconstitutional taking of conclusive judicial notice of a crime element, and the application of harmless error.
   B. Trial court instructions to the jury after the jury had begun deliberation, to disregard legal evidence, thereby interfering with the jury's fact finding role on the element of "Official Capacity", and the application of harmless and cumulative error.
II. Did the trial court err in failing to dismiss the indictment due to vindictive prosecution?
III. Did the trial court err in failing to dismiss the charges due to S.C. Code § 16-15-342 being unconstitutional under the equal protection clauses of the South Carolina and United States Constitutions?
IV. Does S.C. Code § 16-15-342, as interpreted at trial and being enforced, violate the free speech clauses of the South Carolina and United States Constitutions?
   A. Is this protected speech and how to construe S.C. § 16-15-342 and S.C. 15-15-375(5) together and application of the "Chilled Speech Doctrine."
   B. Does conducting sting operations in adult rooms with no emphasis on minor children violate the "Chilled Speech Doctrine"?

ECF No. 22-10 at 8.

 The South Carolina Supreme Court agreed with Petitioner that the trial judge's taking of judicial notice of a crime element was an error, finding, "[t]he taking of judicial notice of Appellant's date of birth was tantamount to a directed verdict on the element of the accused's age, a practice which is clearly forbid[den]. (*Citing United Bhd. of Carpenters & Joiners of Am. v. United States*, 330 U.S. 395, 408 (1947))." ECF No. 22-12 at 11. Although the South Carolina Supreme Court found that an error existed, the supreme court determined that the error was subject to a harmless error standard. *Id*. Using the standard set forth in *Chapman v. California*, 386 U.S. 18, 22 (1967), the Supreme Court determined that the error was harmless "beyond a reasonable doubt in light of the properly admitted evidence that Appellant was eighteen years or older at the time of the underlying offense." *Id*. In its rejection of Petitioner's claims regarding the first issue presented, the South Carolina Supreme Court pointed to the State's testimony from Officer Patterson and the jury's ability to see Petitioner throughout the trial and found that the cumulative effect of the evidence presented provided a proper basis to find harmless error beyond a reasonable doubt. *Id*. at 11.

Further, the South Carolina Supreme Court found that the trial judge made no error in refusing to instruct the jury on the law of bonding. ECF No. 22-12 at 3. The court noted that ". . . Officer Patterson was a municipal police officer with the Westminster City Police Department [and that] State law does not mandate a bond requirement. . ." *Id*.

As to Petitioner's second issue presented, the South Carolina Supreme Court found there was insufficient evidence to show that vindictiveness "played any role in the decision to prosecute" in Oconee County. ECF No. 22-12 at 8. The supreme court considered both actual vindictiveness and a presumption of vindictiveness and concluded that Petitioner fell short of the

"heavy burden of proving that the. . . . prosecution could not be justified as a proper exercise of prosecutorial discretion." (*citing United States v. Wilson*, 262 F.3d 305 at 316). ECF No. 22-12 at 8. Ultimately, the South Carolina Supreme Court found no error in the trial judge's refusal to dismiss the indictment due to vindictive prosecution. *Id*.

Finally, the South Carolina Supreme Court disagreed with Petitioner's claims that Section 16-15-342 is unconstitutional because it violates Petitioner's rights to equal protection and free speech. The supreme court held that courts "have recognized that speech used to further the sexual exploitation of children does not enjoy constitutional protection." ECF No. 22-12 at 12. The supreme court rejected Petitioner's equal protection argument under a rational basis analysis.

On June 5, 2015, the Supreme Court issued a remittitur after denying Petitioner's petition for rehearing. ECF No. 22-15. Petitioner did not file for any post-conviction relief and there are no other requests for relief concerning this conviction in any state or federal court.

On August 14, 2015, Petitioner raised the following issues in his Habeas Petition, quoted verbatim:

> Ground 1. The trial court's taking of conclusive judicial notice of an element of a crime is in violation of the United States Constitution Fifth, Sixth, and Fourteenth Amendments as well as established Federal law under United States Supreme Court Decisions.
>
> Ground 2. The trial court instructing the jury, after deliberations had begun, to disregard legal evidence, thereby interfering with the jury's fact-finding role on the crime of "Official Capacity", is a violation of the United States Constitution Fifth, Sixth, and Fourteenth Amendments as well as established Federal law under United States Supreme Court Decisions.
>
> Ground 3. The trial court's refusal to dismiss the indictment due to vindictive and retaliatory prosecution is in violation of the due process rights established under the United States Constitution Fifth Amendment as well as established Federal law under United States Supreme Court Decisions.

Ground 4. The trial court's refusal to find S.C. Code Section 16-15-342 is an unconstitutional violation of equal protection under the United States Constitution Fourteenth Amendment as well as established Federal law under United States Supreme Court Decisions.

Ground 5. The failure of the trial court to find that the speech in question was protected under the United States Constitution First Amendment, failure to apply the chilled speech doctrine, and failure to find that S.C. Code Section 16-15-342 was being enforced unconstitutionally in violation of United States Constitution First Amendment as well as established Federal law under United States Supreme Court Decisions.

Ground 6. The failure of the trial court to apply the chilled speech doctrine of the United States Constitution First Amendment, since the State's sting operation was being conducted in adult chat rooms with no emphasis on minor children in violation of United States Constitution First Amendment as well as established Federal law under the United States Supreme Court Decisions.

ECF No. 1 at 4-5.

Respondent opposed Petitioner's petition and moved for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure on December 21, 2015. ECF. No. 22. Petitioner filed a response in opposition on January 22, 2016, maintaining all six grounds raised in his habeas petition. ECF No. 29.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02 D.S.C., the matter was referred to United States Magistrate Judge Kaymani D. West for pretrial handling. On May 3, 2016, the Magistrate Judge issued a Report and Recommendation in which she recommended the court grant Respondent's motion for summary judgment. ECF No. 31. Petitioner filed objections to the Report and Recommendation on May 16, 2016, and Respondent filed a reply to Petitioner's objections on June 2, 2015. For the reasons set forth below, the court adopts the Report and Recommendation of the Magistrate Judge, **GRANTS** Respondent's motion for summary judgment and **DISMISSES** the Habeas Petition with prejudice.

## I.     LEGAL STANDARDS

### A.  District Court Review of Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court reviews *de novo* only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to—including those portions to which only "general and conclusory" objections have been made—for clear error. *Diamond v. Colonia Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Opriano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

### B.  Federal Habeas Review

Review of federal habeas claims are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2254(d) (2012). A court's review of a § 2254 petition is limited by subsection (d), which provides that:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C § 2254(d).

Federal courts defer to a state court's resolution of habeas claims by state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). A federal court will reverse the state court's decision only if the decision is "contrary to . . . clearly established federal law [or] applies a rule that contradicts the governing law set forth" by the Supreme Court of the United States or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a different result." *Williams v. Taylor*, 529 U.S. 362, 406 (2000). In contrast, a state court's decision "involves an unreasonable application of clearly established federal law if the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of a particular state prisoner's case." *Id*. at 407. "The focus of federal court [habeas] review is on the state court decision that previously addressed the claims rather than the petitioner's free-standing claims themselves." *McLee v. Agelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997), *appeal dismissed*, 139 F.3d 891 (4th Cir. 1988). An unreasonable application is more than mere incorrect application, it must be "objectively unreasonable," which is a higher standard. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)(internal citations omitted).

In almost all circumstances, petitioners seeking relief pursuant to § 2254 must exhaust all available state court remedies before seeking relief in federal court. 28 U.S.C. § 2254(b). As the Magistrate Judge correctly detailed, "In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for Post-Conviction Relief. State law requires that all grounds be stated in the direct appeal or PCR application." S.C. App. Ct. Rule 202; S.C. Code Ann. § 17-27-10; *Blakely v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). "If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has

procedurally bypassed his opportunity for relief in the state courts and in federal court." 28

U.S.C. § 2254(b)(1)(A).

### C.  Summary Judgment

Pursuant to Federal Rules of Civil Procedure Rule 56(a), the court shall grant summary

judgment if the moving party shows that there is no genuine dispute as to any material fact and is

entitled to judgment as a matter of law. The evidence presents a genuine issue of material fact if

a "reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 24, 251-52 (1986). Any inference drawn from the facts should be viewed in the

light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655

(1962). The party seeking summary judgment bears the initial burden of demonstrating to the

district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S

317-23 (1986). Once the moving party makes this showing, the opposing party must set forth

specific facts showing there is a genuine issue of fact.

The Court finds that Petitioner has exhausted all necessary state court remedies by

pursuing each of his habeas claims on direct appeal. Further, Petitioner did not file for post-

conviction relief, nor did he raise any ineffective assistance of counsel claims. ECF. No. 22 at 7.

Therefore, the Court will review and analyze Petitioner's objections to the Magistrate Judge's

Report and Recommendation.

### II.    DISCUSSION

#### A.  Petitioner's Habeas Claims

Petitioner first argues that the trial judge violated his Fifth, Sixth, and Fourteenth

Amendment rights when the judge took judicial notice of Petitioner's age. ECF No. 1-1 at 6.

Petitioner contends that age is an element of the offense of criminal solicitation of a minor and

all elements of the crime are "reserved for determination by the jury." *Id*. Furthermore, Petitioner argues that "the instruction 'that [Petitioner] was born on June 22, 1973 . . . and that [the jury] shall not debate it,'" amounts to a directed verdict of guilty on the age element. ECF No. 1-1 at 8. Petitioner argues that this amounted to a structural error at trial, and therefore automatic reversal is required. ECF No. 1-1 at 9. In the alternative, Petitioner argues that should a harmless error analysis apply, *Chapman v. California*, 386 U.S. 18 (1967), governs and that under the *Chapman* standard of "harmless beyond a reasonable doubt," the judicial notice was not a "harmless error." *Id*. at 11. Petitioner rejects the South Carolina Supreme Court's determination that the judicial notice of the age element was a harmless error and posits that, "[t]he application of harmless error review by the South Carolina Supreme Court was contrary to clearly established federal law and objectively unreasonable." *Id*. at 12.

Petitioner asserts, as ground two of his Habeas Petition, that the trial judge erred when instructing the jury not to deliberate on the issue of a legal requirement that a police officer have a bond to be acting in his official capacity. ECF No. 1-1 at 23; *see also* ECF No. 22 at 18; ECF No. 22-12 at 3. Petitioner asserts, "due to the misapplication of law and findings of fact that did not exist the South Carolina Supreme Court avoided this issue entirely and conducted no analysis as to the type of constitutional violation these acts are, nor did they examine whether the violations are structural or harmless." ECF No. 1-1 at 29. Petitioner concludes that the supreme court's finding as it pertained to his ground two issues, was unreasonable. *Id*.

In his third ground, Petitioner argues that his constitutional rights were violated when the trial judge refused "to dismiss the indictment due to vindictive and retaliatory prosecution . . . ." ECF No. 1-1 at 30. Petitioner asserts that the prosecutor only decided to charge Petitioner for his

conduct in Oconee County after Petitioner sought records concerning Officer Patterson. To

support this, Petitioner reasons:

> The claim of vindictive prosecution, characterized by the trial court as a 'close call', springs from Odom being punished (prosecuted in Oconee) for legally pursuing his defense in a different case. A finding of vindictive prosecution is supported by a) the testimony given by Odom's Lead trial Counsel on June 27, 2011, and at trial; b) Statements on the record by the Lead State's Counsel at the June 27, 2011 hearing and at trial; c) the conduct of the investigation of this case; d) the length of time to indict the case; e) a letter of former State Lead Counsel, David Stumbo; f) on the record Statements, of David Stumbo, Esquire; g) the fact that no incident report was completed for this case at any point; and h) comments made by the South Carolina Attorney General Henry McMaster while running for Governor for the State of South Carolina.

ECF No. 1-1 at 31.

Citing *United States v. Wilson*, 262 F.3d 305, Petitioner argues that the decision to indict

in Oconee County was one that should be analyzed under the presumption of vindictiveness

standard. ECF No. 1-1 at 31. Petitioner also believes that the South Carolina Supreme Court

erroneously applied the standard for "malicious prosecution," instead of the correct standard for

"vindictive prosecution." *Id*.

For his fourth ground, Petitioner raises an equal protection claim under the Fourteenth

Amendment, asserting that "the statute under which he is charged leads to disparate treatment

due to the availability of a consent defense for a limited age group in S.C. Code Ann. § 16-15-

342(B) and (D)." ECF No. 22 at 36. Petitioner contends that "[s]ubsection (B) allows a defendant

the defense of consent if the person being solicited is at least sixteen years old, but subsection

(D) removes the defense of consent if the person being solicited is actually a law enforcement

officer, necessarily over the age of sixteen, who is acting in his official capacity to catch an

online predator. S.C. Code § 16-15-342." ECF No. 22 at 37.  Petitioner objects to the South

Carolina Supreme Court's rejection of his equal protection claim, arguing that the statute under

which he was charged "is clearly in violation of the equal protection clause as there is no rational

basis for the different treatment of the two classes, and to find otherwise is objectively

unreasonable." ECF No. 1-1 at 49.

In ground five, Petitioner asserts that "his rights to Free Speech under both the United

States Constitution and the South Carolina Constitution have been infringed." ECF No. 1-1 at 50.

In ground six of his habeas petition, Petitioner argues that the trial judge's failure to apply the

chilled speech doctrine violated his First Amendment rights because the State's sting operation

was being conducted in a chat room specifically created for persons over the age of eighteen.

ECF. No. 1-1 at 57. Petitioner relied on *Ashcroft v. Free Speech Coalition*, arguing that under

that case the South Carolina statute would chill free speech.  As Respondent summarizes,

"Petitioner maintains that he was engaged in lawful speech within that chat room and that his

being charged for solicitation of a minor is an unlawful restraint on his freedom of speech." ECF.

No 22 at 43. To support his argument, Petitioner explains:

> The State, by going into a known adult chat room for such investigation chills lawful
> speech under threat of prosecution, such as role-play, age-play, or cybersex. Adults have
> the right to present to be any age and engage in any such chat as they wish. The presence
> of investigations in such rooms chills huge swaths of protected speech and makes such
> speech less likely where few would risk the charge of prosecution for engaging in this
> protected speech. As such, under the "chilled speech" doctrine the conduct of the
> investigation due to the State's interpretation of the statute is unconstitutional. (*citing
> Ashcroft v. Free Speech Coalition*, 535 U.S. 234)."

ECF. No. 1-1 at 58.

Petitioner asserts that the Supreme Court's analysis on both his ground five and six

claims are unreasonable when the Supreme Court summarily declared that Petitioner's rights

were not violated. ECF No. 1-1 at 56.

### B.  Magistrate Judge's Report and Recommendation

First, the Magistrate Judge addressed Petitioner's ground one claim, finding that the

supreme court did not err in its decision on the issue. The Magistrate Judge reasoned, "[a]s the

state appellate court found, an error occurred because the trial judge partially took away the

State's burden." ECF No. 31 at 15. However, the Magistrate Judge found that the trial judge's

error was not in the class of cases that the United States Supreme Court determined required

automatic reversal. *Id*. Instead, she reasoned, the court's "purported error is subject to the

harmless-error analysis." *Id*.

The Magistrate Judge also rejected Petitioner's ground two claims and determined that

the state trial judge was not applying federal law. ECF No. 31 at 17. Instead, the Magistrate

Judge concluded, the state court issued a jury instruction concerning a state law, and charged that

the jury not deliberate on a state legal issue. ECF No. 31 at 16-17. The Magistrate Judge found

that the decision to instruct the jury on a particular issue of law in a state court matter is not

cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62 (1991) (holding that

"federal habeas corpus relief does not lie for errors of state law."). ECF No. 31 at 17.

On ground three, the Magistrate Judge determined that a presumption of vindictive

prosecution was not warranted in this case. ECF No. 31 at 25. The Magistrate Judge found,

"based on the undisputed timing of the State's decisions concerning how many charges to bring

against Petitioner (not what charges to bring or the severity of the charge), there can be no

presumption of vindictiveness." *Id*.

Next, the Magistrate Judge addressed Petitioner's equal protection claims and determined

that ". . . the appellate court's decision on the equal protection issue was not an unreasonable

application of federal law. Additionally, the undersigned finds that Petitioner has failed to

demonstrate that the state court's decision was based on an unreasonable determination of the

facts in light of the evidence presented in the state court proceeding." ECF No. 31 at 28. While

the Magistrate Judge indicated that Petitioner did not show purposeful discrimination, the

15

Magistrate Judge did not base her final determination on that standard. ECF No. 31 at 27. Indeed, the Magistrate Judge points out that "[e]ven if Petitioner was able to meet this initial hurdle [showing of purposeful discrimination], according to the Supreme Court, 'the general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.' *City if Cleburn, Tex.v Cleburn Living Ctr.*, 473 U.S. 432, 440 (1985)." *Id.*

Finally, the Magistrate Judge rejected Petitioner's claims in ground five and six of his Habeas Petition concerning the state statute and potential First Amendment violations. The Magistrate Judge determined that the facts of the underlying offense are distinguishable from *Ashcroft*. The Magistrate explained this distinction, "namely, the statute in *Ashcroft* attempted to prohibit constitutionally protected speech but punishes individuals for the solicitation or intent to solicit minors for sexual activity. Therefore the undersigned finds the South Carolina Supreme Court's decision on the First Amendment issue was not an unreasonable application of federal law." ECF No. 31 at 31-32.

### C. Petitioner's Objections to Report and Recommendation and Analysis

Petitioner objects to the Magistrate Judge's Report and Recommendation concerning his ground one claims, arguing that the Magistrate Judge incorrectly concluded that the taking of conclusive judicial notice of a crime was not a constitutional violation. ECF No. 32 at 4. Petitioner further posits that the Magistrate Judge used the wrong standard of review. *Id.*

As the Magistrate Judge noted, when considering a constitutional error, the court must first determine if that error is structural and automatically reversible or if the error is subject to a harmless error analysis. *Neder v. United States*, 527 U.S. 1 (1999); *Sullivan v. Louisiana*, 508 U.S. 275 (1993). Structural errors have been found only in a "limited class of cases." *Neder*, 527

U.S. at 8. A complete denial of counsel, *Johnson v. United States*, 520 U.S. 461 (1997); biased trial judge, *Turney v. Ohio*, 273 U.S. 510 (1927); racial discrimination in selection of a grand jury, *Vasquez v. Hillery*, 474 U.S. 254 (1986); denial of self-representation at trial, *McKaskle v. Wiggins,* 465 U.S. 168 (1984); denial of a public trial, *Waller v. Georgia*, 467 U.S. 39 (1984); and defective reasonable-doubt instruction, *Sullivan*, 508 U.S. 275, have been found as structural errors necessitating automatic reversal. *Id.* "Errors of this type are so intrinsically harmful as to require automatic reversal (i.e., 'affect substantial rights') without regard to their effect on the outcome." *Id.* at 7. However, "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any errors that may have occurred are subject to harmless-error analysis." *Rose v. Clark*, 478 U.S. 570, 579 (1986).

Jury instructions that omit an element of an offense do not necessarily render a criminal trial fundamentally unfair and subject to automatic reversal. *Neder,* 527 U.S. at 9.  In *Neder*, an instruction on an element of a crime was omitted from the jury instructions and decided by the judge. *Id.* at 8-9. The Court reasoned that such an error is markedly different from structural errors, since structural errors "contain a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" *Id.* (quoting *Fulminante*, 499 U.S. at 310). Accordingly, the Court turns to a harmless error analysis.

Once a court determines that a constitutional error should be analyzed under a harmless error standard, the court must determine if the harmless error standard is met. The Magistrate Judge applied the *Chapman* standard. However, in habeas petitions pursuant to § 2254, "a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*." *Fry v. Pliler*, 551 U.S. 112, 121 (2007). Courts are to apply the *Brecht* standard "whether or not the state appellate court

recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman* v. *California*." *Id*. The *Brecht* standard required that the error had "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. 619, 619 (1993).

While Petitioner argues that the harmless error standard articulated in *Chapman* was the correct standard of review on direct appeal, Petitioner asserts that *Fry v. Pliler*, 551 U.S. 112, requires the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), be applied during habeas review. ECF No. 32 at 6. Petitioner attempts to state that because the judicial notice served as a directed verdict, there was no "jury verdict" on the element of age and, as such, the judicial notice had a substantial and injurious effect or influence on the jury's "non-verdict." ECF No. 1-1 at 11. Petitioner believes the Magistrate Judge's assessment that the age evidence presented at trial cumulatively calls for a harmless error analysis is incorrect because the age that Petitioner allegedly used in his "40 male Columbia" chat room description was not his actual age at the time of the conversations and was not the age supported by the DMV records that Respondent presented at trial. ECF. No 32 at 6. Finally, Petitioner rejects the claim that the jury's observation of Petitioner throughout the trial should be taken into account. *Id*. at 7.

While the Magistrate Judge erred in applying the *Chapman* standard to Petitioner's habeas claim, this Court agrees with the Magistrate Judge's ultimate finding that the judicial notice of Petitioner's age was a harmless error. The harmless error standard in *Brecht* makes it harder to obtain relief on a habeas petition than the standard set forth in *Chapman*. Indeed, the courts have concluded that "application of a less onerous harmless error standard on habeas promotes the considerations underlying our habeas jurisprudence." *Brech*t, 507 U.S. at 622. Under the "substantially injurious" standard, "habeas petitioners may obtain plenary review of

their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.* at 637. The Supreme Court addressed the habeas standard even further determining that "overturning final and presumptively correct convictions on collateral review because the State cannot prove that an error is harmless under *Chapman* undermines the State's interest in finality and infringes upon their sovereignty over criminal matters." *Id.* As a result, this court agrees with the Magistrate Judge's recommendation that Respondent's motion for summary judgment should be granted as to ground one.

In defense of his ground two claims, Petitioner objects to the Magistrate Judge's Report and Recommendation. Petitioner believes that the Magistrate Judge focused her analysis on whether the trial judge correctly instructed on the state law, when Petitioner claims his habeas petition for relief was based on the judge instructing the jury during deliberations not to consider a fact presented during trial. ECF No. 32 at 7. Petitioner contends that the Magistrate Judge erred in finding that the issue was an issue of state law. This Court disagrees.

The federal courts do not re-try state cases. *Milton v. Wainwright*, 407 U.S. 371, 377 (1972). Instead, they review for violations of federal constitutional standards. *Id.* State courts are final arbiters of state law. *E.g.*, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). A state court's interpretation of state law, including those announced on direct appeal of a conviction, bind a federal court on habeas review. *Id.* Federal courts only correct wrongs of a federal constitutional dimension. *Lunchenburg v. Smith* 79 F.3d 388, 391 (4th Cir. 1996) (quoting *Smith v. Phillips*, 455 U.S. 209, 221 (1982)).

This Court agrees with the findings of the Magistrate Judge's ruling that ground two of the habeas petition is not cognizable on federal habeas review. Any jury instruction on official capacity or the way in which the jury should interpret the elements of the crimes charged are

state issues. Ground two does not implicate any federal law since the jury was charged with instructions concerning only state law, whether erroneous or correct. Petitioner does not raise any federal claims or offer any legal authority for his assertion that the instruction given mid-deliberation was a violation of Petitioner's constitutional rights under federal law. For the foregoing reasons, Petitioner's objections to the Magistrate Judge's findings as to ground two are without merit.

In his objections to the Magistrate Judge's Report and Recommendation as to ground three of his habeas claims, Petitioner argues that both the Magistrate Judge and the South Carolina Supreme Court erred in the standard applied for vindictive prosecution. ECF No. 32 at 10. Petitioner believes that the proper standard to apply would be under the standard of vindictive or retaliatory prosecution, not malicious prosecution. Petitioner argues that the South Carolina Supreme Court mandated that Petitioner had to show "actual malice" and that as such, the wrong standard was applied. Finally, Petitioner argues that both courts erroneously determined that the decision to charge in Oconee was a pre-trial decision, because Petitioner was not charged in Oconee County until after the Spartanburg trial was called in 2010. *Id.*

A prosecutor violates the Due Process Clause of the Fifth Amendment by imposing a price for a defendant exercising an established right or punishing the defendant for doing what the law allows him to do. *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001) (citing *Goodwin*, 457 U.S. 368, 372). To establish prosecutorial vindictiveness, a defendant must show that: (1) "the prosecutor acted with genuine animus toward the defendant"; and (2) "the defendant would not have been prosecuted but for that animus." *Id.* (citing *Goodwin*, 457 U.S. at 380 n.12). The charges must be brought "solely to 'penalize' the defendant" and cannot be justified as a "proper exercise of prosecutorial discretion." *Goodwin*, 457 U.S. 368 at 380 n.12.

20

"If the defendant is unable to prove an improper motive with direct evidence, he may still present evidence of circumstances from which an improper vindictive motive may be presumed." *Wilson*, 262 F.3d at 314. To invoke such a presumption, a defendant must show that the circumstances "pose a realistic likelihood of vindictiveness." *Blackledge v. Perry*, 417 U.S. 21, 27 (1974). "But such a presumption is warranted only when circumstances warrant it for all cases of the type presented." *Wilson*, 262 F.3d at 315 (citing *Goodwin*, 457 U.S. at 381).

A presumption of vindictive prosecution is not warranted prior to trial. *See id.* A presumption of vindictiveness will rarely, if ever, be applied to prosecutors' pretrial decisions because the presumption must be applicable to all cases presenting the same circumstances. *Id.* (citing *Goodwin*, 457 U.S. at 381). "There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting." *Goodwin*, 457 U.S. at 381. "At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized." *Id.*

"A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution." *Goodwin*, 457 U.S. at 382. "An initial decision should not freeze future conduct." *Id.* In *Bordenkircher*, a prosecutor carried out a threat made during plea negotiations to bring additional charges if the defendant refused to enter a guilty plea to the original charge. 434 U.S. 357, 358-59 (1978). The Court found that this decision was distinct from situations where a defendant chose to exercise legal rights to attack his original conviction. *Id.* at 362-63. Similarly, in *Goodwin*, the defendant was charged with misdemeanors and arraigned before a United States Magistrate Judge. 457 U.S. 368, 370. After the defendant requested a jury trial, prosecutors obtained a four-count indictment that included a felony charge. *Id.* at 371. The defendant was convicted on the felony and one other count. *Id.* In

both cases, the Court held that a prosecutor should remain free prior to trial to exercise his broad discretion; therefore, a presumption of vindictiveness was unwarranted.

"[A] mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule." *Id.* at 384. Here, the State decided prior to the Spartanburg trial to indict Petitioner in Oconee County. The State initially decided to only prosecute the Spartanburg allegations to avoid juror confusion based on collateral issues; however, the Oconee indictment occurred shortly after the trial in Spartanburg ended. ECF No. 22 at 33-34. To rebut Petitioner's claim of vindictive prosecution, the prosecutors explained that as matters progressed towards the Spartanburg trial and collateral issues arose, the State decided, prior to commencement of the Spartanburg trial, to seek indictments in Oconee as well. ECF No. 22 at 30-35. Moreover, a change in the prosecution's leadership arose during the time frame of the original case. ECF No. 22 at 30-35. Finally, the State never foreclosed the option of a separate indictment. ECF. No. 22 at 30-35. As a result, no presumption of vindictiveness should attach.

Contrary to Petitioner's contention, the South Carolina Supreme Court applied the prosecutorial vindictiveness standard set forth in *Wilson*, the same standard that Petitioner raises in his habeas petition. Further, both the South Carolina Supreme Court and the Magistrate Judge found, and the record supports that while the indictment came after the Spartanburg trial, the decision to charge in Oconee County was both determined and relayed to Petitioner before the Spartanburg trial was called on remand in 2010. Petitioner has failed to prove vindictive prosecution. The Supreme Court did not make an unreasonable determination of the facts and reasonably applied them to the established law. As a result, this court adopts the Magistrate Judge's recommendation that Respondent's motion for summary judgment be granted as to ground three.

As to his claims in the fourth ground, Petitioner objects to the Magistrate Judge's Report and Recommendation in that it found that Petitioner "did not show intentional discrimination for an equal protection violation by finding that the purpose of the statute is also the rational basis for the unequal treating of similarly situated individuals under the statute." ECF No. 32 at 13.

The Equal Protection Clause of the Fourteenth Amendment commands that similarly situated individuals be treated alike. *See* U.S. Const. amend. XIV, § 1. This principal must coexist with the practical necessity that legislation classify individuals differently for various purposes, with resulting disadvantages to various groups or persons. *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 271-72 (1979). However, as the Magistrate Judge correctly noted, if a law neither burdens a fundamental right nor targets a suspect class, the legislative classification will be upheld so long as it bears some rational relation to a legitimate state interest. *Romer v. Evans*, 517 U.S. 620, 631 (1996). On rational basis review, a classification in a statute bears a strong presumption of validity. *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 314 (1993). Those attacking the validity of such a statute have the burden of negating "every conceivable basis which might support it." *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973) (internal quotation marks omitted). It is irrelevant for constitutional purposes whether the conceived reasons for enacting the statute actually motivated the legislature. *United States Railroad Retirement Bd. v. Fritz*. 449 U.S. 166, 179 (1980).

A classification will survive rational basis review when "(1) the classification bears a relation to the legislative purpose sought to be achieved; (2) the members of the class are treated alike under similar circumstances; and (3), the classification rests on a rational basis." *Storm M.H. ex rel. McSwain v. Charleston County Bd. of Trustees,* 735 S.E.2d 492, 499 (2012). The Magistrate Judge accepted Respondent's arguments, which asserted that the purpose of S.C.

Code Annotated § 16-16-342(d) "is to allow the investigation and criminalization of harm to minors caused when they are solicited for sexual acts or to commit crimes." ECF No. 31 at 27. This court agrees with the Magistrate Judge's determination that there is a rational basis for treating those speaking to law enforcement differently. *Id*. at 28. As a result, this court adopts the Magistrate Judge's recommendation that Respondent's motion for summary judgment be granted as to ground four of Petitioner's habeas petition.

Finally, Petitioner objects to the Magistrate Judge's finding that speech is not chilled between adults in adult chat rooms. ECF. No. 32 at 15. Petitioner claims that the Magistrate Judge "misses the linchpin of Odom's argument, that there was no solicitation of any illegal sexual conduct." *Id*. Further, Petitioner states that "no reasonable adult would feel free to engage in age play or many other types of fantasy chats, when such stings are taking place." *Id*.

There is no First Amendment right to solicit sexual activity from a minor. *E.g.*, *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000). That proposition "does not change simply because a person solicits sexual activity from an adult police officer whom he erroneously believes is a minor." *Alley v. Leis*, No, 1:05-CV-151, 2007 WL 1795299 at *3 (S.D Ohio June 19, 2007). In *Alley*, a statute criminalizing solicitation of a minor was found not to violate the First Amendment since the statute regulates conduct and not speech. *Alley*, 2007 WL 1795299 at *3-*4. Here, the statute in question criminalizes solicitation of a minor. Since solicitation is defined as conduct, there is no First Amendment violation.

This court agrees with the Magistrate Judge's assessment and believes that such findings were based on a reasonable interpretation of the law. As a result, this Court adopts the Magistrate Judge's recommendation that Respondent's motion for summary judgment be granted as to both grounds five and six.

### III.    CONCLUSION

The Court concurs in the Magistrate Judge's Report and Recommendation. For the reasons stated, Respondent's motion for summary judgment (ECF No. 22) is **GRANTED**. Petitioner's petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.

### I.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases, as effective December 1, 2009, provides that the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). The court concludes that Petitioner has not made the requisite showing. Accordingly, the court **DENIES** a certificate of appealability.

**IT IS SO ORDERED**.

s/ Margaret B. Seymour
MARGARET B. SEYMOUR
SENIOR UNITED STATES DISTRICT JUDGE

October 7, 2016
Columbia, South Carolina